# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE AT GREENEVILLE

| | |
|---|---|
| **ROBIN FRITZ,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| **v.** | } **CASE NO.:** |
| | } **JURY TRIAL DEMANDED** |
| **SULLIVAN COUNTY, TENNESSEE;** | } |
| **BRANDON HARER, in his individual** | } |
| **capacity; RICHARD VENABLE, in his** | } |
| **individual capacity; JEFF CASSIDY, in** | } |
| **his individual capacity; RAVEN MUNZ, in her** | } |
| **individual capacity; RODGER JONES, in** | } |
| **his individual capacity; and JOHN DOES** | } |
| **and JANE DOES 1- 5, in their individual** | } |
| **capacities, all whose true names are unknown,** | } |
| | } |
| **Defendants.** | } |

## COMPLAINT

**COMES NOW,** the plaintiff, Robin Fritz ("Plaintiff" or "Ms. Fritz"), by and through her

counsel of record; and, for her *Complaint* against Sullivan County, Tennessee ("Sullivan County");

Brandon Harer, in his individual capacity ("Deputy Harer"); Richard Venable, in his individual

capacity ("Mayor Venable"); Jeff Cassidy, in his individual capacity ("Sheriff Cassidy"); Raven

Munz, in her individual capacity (Deputy Munz); Rodger Jones, in his individual capacity

(Constable Jones); and, John Doe and Jane Doe 1 - 5, in their individual capacities, whose true

names are unknown ("John Doe and Jane Doe 1 - 5") (collectively, "Defendants") avers as follows:

### I.     PARTIES

1.     Plaintiff Robin Fritz is a resident citizen of Sullivan County, Tennessee. At all

material times, Ms. Fritz resided at 309 Timberland Court, Kingsport, Tennessee 37664. At all

material times, Ms. Fritz was a 61-year-old, five (5)-foot, one-inch-tall, 176-pound, unarmed female.

2. Defendant Sullivan County, Tennessee is a governmental entity that, by and through its sheriff's department, is responsible for the hiring, training, supervision, and discipline of Sullivan County sheriff's deputies. Sullivan County may be served with process via Mayor Richard Venable at 3411 TN-126, Blountville, Tennessee 37617.

3. Upon information and belief, Defendant Brandon Harer is a resident citizen of Sullivan County, Tennessee. At all times material hereto, Deputy Harer was employed by Sullivan County Tennessee as a sheriff's deputy; accordingly, at all material times, Deputy Harer acted under color of state law. Deputy Harer is sued in his individual capacity. Deputy Harer may be served with process at 140 Blountville Bypass, Blountville, Tennessee 37617.

4. Defendant Richard Venable is the mayor of Sullivan County, Tennessee. At all material times, Mayor Venable was responsible for the promulgation of rules, regulations, policies, and procedures applicable to and implemented by Sullivan County, Tennessee, including the Sullivan County Sheriff's Department. Mayor Venable may be served with process at 3411 TN-126, Blountville, Tennessee 37617.

5. Defendant Jeff Cassidy is the Sheriff of Sullivan County. At all material times, Sheriff Cassidy was responsible for the promulgation of rules, regulations, policies, and procedures applicable to and implemented by the Sullivan County Sheriff's Department. Sheriff Cassidy may be served with process at 140 Blountville Bypass, Blountville, Tennessee 37617.

6. Upon information and belief, Defendant Rodger Jones is a resident citizen of the State of Tennessee, County of Sullivan. At all material times, Constable Jones was an elected county constable. Constable Jones acted under color of state law. Jones is sued in his individual

2

capacity. Constable Jones may be served with process at 3411 TN-126, Blountville, Tennessee 37617.

7.    Upon information and belief, Defendants John Doe and Jane Doe 1 - 5 are resident citizens of Sullivan County, Tennessee. At material times, John Doe and Jane Doe 1 - 5 were employed by Sullivan County as deputy sheriffs or constables. At all material times, John Doe and Jane Doe 1 - 5 acted under color of state law. Plaintiff is suing John Doe and Jane Doe 1 - 5 in their individual capacities. Upon information and belief, John Doe and Jane Doe 1 - 5 may be served with process at 140 Blountville Bypass, Blountville, Tennessee 37617.

## II.    JURISDICTION AND VENUE

8.    The Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this action is brought pursuant to 42 U.S.C. § 1983, and the United States Constitution.

9.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the remaining causes of action because such claims are so related to the claims within the original jurisdiction of this Court, that they form part of the same case or controversy.

10.    All state-law claims averred are brought pursuant to the Government Tort Liability Act.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial portion of the events or omissions giving rise to the claim occurred in Sullivan County, Tennessee.

## III.    GENERAL ALLEGATIONS

12.    Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-11.

13.    On May 22, 2021, Ms. Fritz was operating a Mini Cooper in Sullivan County, Tennessee.

14.     While returning to her residence from a local grocery store, Ms. Fritz was the victim of a reckless-driving incident, as a vehicle, operated by a young man (approximately 18-years old) (hereinafter referred to as "C.H."), was being erratically driven.

15.     At the time of the reckless-driving incident, Ms. Fritz and C.H., were travelling on Shady View Road, in Kingsport, Sullivan County, Tennessee.

16.     Shady View Road is a two-direction/no-passing-zone, rural highway with a designated speed limit of 35-miles-per hour.

17.     Ms. Fritz was operating her vehicle in accordance with the posted speed limit (35-miles-per hour).

18.     C.H. began tailgating Ms. Fritz's vehicle. Thereafter, C.H. crossed the double-yellow line, into the oncoming lane of traffic, in order to pass Ms. Fritz's vehicle.

19.     During his effort to return to the proper lane of travel, C.H. cut so closely in front of Ms. Fritz's vehicle, that it was necessary for Ms. Fritz to maneuver her vehicle accordingly to avoid either striking C.H.'s vehicle or losing control of her own vehicle.

20.     Recognizing C.H. as residing in her neighborhood and being concerned for his safety (and that of others, herself included), Ms. Fritz made the decision to inform C.H.'s parents of their son's reckless driving. Accordingly, Ms. Fritz followed C.H. to his residence, which was a short distance from her own residence.

21.     Upon arriving at C.H.'s residence, Ms. Fritz parked her vehicle at the end of the two-vehicle driveway. C.H. had parked his vehicle at the front of the driveway, perpendicular to the garage doors. There were no other vehicles in the driveway.

4

22. Upon exiting their respective vehicles, while standing approximately six (6) feet from C.H., Ms. Fritz informed C.H. that his reckless driving could have injured or killed her and/or one of the many children who often play in their neighborhood.

23. Upon Ms. Fritz's admonition, C.H. retorted: "[Y]ou can't fucking prove it"; and "I can't help it if you drive slower than shit", or words to that effect.

24. Thereafter, Ms. Fritz inquired about the whereabouts of C.H.'s parents, informing him that she was going to alert his parents as to his reckless driving, in an effort to keep the neighborhood safe.

25. Prior to entering his residence and slamming the door shut, C.H. retorted to Ms. Fritz the following: "Get off my property! You are trespassing!", or words to that effect.

26. Ms. Fritz made the decision to inquire of C.H.'s next-door neighbors if they knew of the whereabouts of C.H.'s parents and walked next door to do the same.

27. Finding no one home at the neighbor's residence and believing that, perhaps, C.H.'s parents were home, Ms. Fritz returned to C.H.'s residence and rang the doorbell. No one answered.

28. Ms. Fritz heard a voice inside the residence declare: "Dude, she is still out there!" and "Why doesn't she just fucking leave?!", or words to that effect.

29. Ms. Fritz became alarmed upon hearing these vitriol outbursts and considered the probability that C.H.'s parents were not in the residence, as C.H. was openly using such profane language.

30. Ms. Fritz returned to her vehicle and called Emergency 911, presuming that law enforcement would contact C.H.'s parents and inform them of his reckless driving and the danger of his actions.

31. Ms. Fritz described the reckless-driving incident, as well as the current situation, to 911 dispatch. Ms. Fritz then provided C.H.'s address, as well as her present location, to the dispatcher.

32. The dispatcher questioned Ms. Fritz as to the accuracy of the location given and, upon determining the correct address, inquired if Ms. Fritz was the "person blocking the driveway".

33. Ms. Fritz responded that her Mini Cooper was parked at the bottom of the two-vehicle driveway and was not blocking egress of the vehicle in the driveway.

34. Notwithstanding, Ms. Fritz informed dispatch that she would move her vehicle so as not to be on someone else's property.

35. Ms. Fritz moved her vehicle and parked parallel to the street curb directly in front of C.H.'s residence.

36. Given the interaction with Emergency 911 dispatch, it was clear that C.H., or someone on his behalf, had called 911 immediately prior to, or simultaneously with, Ms. Fritz placing her call.

37. Ms. Fritz remained in her vehicle awaiting arrival of law enforcement.

38. Within moments, a Sullivan County Sheriff's Department vehicle approached the residence and parked on the same side of the street as Ms. Fritz, with the residential driveway, free from obstruction, between Ms. Fritz's vehicle and the patrol vehicle.

39. Sullivan County Sheriff's Department Deputy Raven Munz ("Deputy Munz") and Ms. Fritz exited their respective vehicles simultaneously. As Ms. Fritz approached Deputy Munz, she (Deputy Munz) asked, "What's going on?". At that point, Ms. Fritz realized that she was not wearing a facial mask. Ms. Fritz was adamant about wearing a facial mask in public, as it was

during the height of the COVID-19 pandemic. Accordingly, she returned to her vehicle to retrieve a mask.

40. Upon donning a mask, Ms. Fritz returned to speak with Deputy Munz and requested Deputy Munz also don a facial mask.

41. In response, Deputy Munz instantly exhibited an angry demeanor and declared: "I do not have to wear a mask. I go by what [Mayor] Venable and [Governor] Lee say, not [President] Biden".

42. Ms. Fritz repeated her request that Deputy Munz don a facial mask, and then described the reckless-driving incident to Deputy Munz. As Ms. Fritz spoke, Deputy Munz's demeanor became increasingly angry. Deputy Munz then demanded a driver license for identification purposes.

43. In response to this directive, Ms. Fritz returned to her vehicle to retrieve her driver license. Ms. Fritz was unable to find her license but was able to produce an employee identification card that displayed her photograph. Deputy Munz accepted such identification as sufficient.

44. With her identity confirmed, Ms. Fritz continued to describe the reckless driving incident to Deputy Munz. In the process, Ms. Fritz stepped towards C.H.'s driveway. Since Ms. Fritz's was standing at the bottom of the driveway, upon her movement, she inadvertently moved her foot. In doing so, her foot was positioned on C.H.'s property: *i.e.*, the edge of the driveway.

45. Deputy Munz grabbed Ms. Fritz, pulled her backward, and shouted: "Get off the driveway; you're trespassing!". Deputy Munz admonished Ms. Fritz that the initial 911 call [from a third party – C.H.'s father] was to report an individual [Ms. Fritz] trespassing on their property.

46. Ms. Fritz began to feel threatened, as she believed that Deputy Munz's hostile demeanor coupled with the remarks about President Biden exhibited a political bias. Ms. Fritz also

suspected that Deputy Munz made assumptions regarding Ms. Fritz's political views (as a result of Ms. Fritz's request relating to facial masks).

47.     Ms. Fritz informed Deputy Munz that she was returning to her residence and informed Deputy Munz that, if necessary, Deputy Munz could come to her residence to further discuss the matter. Ms. Fritz then repeated her address for Deputy Munz's convenience. Ms. Fritz returned to her vehicle and drove to her residence without incident or interference.

48.     Deputy Munz did not advise, warn, or announce, in any manner whatsoever, that Ms. Fritz was: (1) not at liberty to leave on her own volition; (2) was being detained; and/or (3) was under arrest.

49.     Ms. Fritz exited her vehicle upon pulling into her driveway. Shortly thereafter, Sullivan County Sheriff's Deputy Brandon Harer ("Deputy Harer"), pulled up and parked his patrol vehicle so that it blocked the residential driveway. Deputy Harer exited his patrol vehicle, approached Ms. Fritz, and demanded to know: "[W]hat's going on?".

50.     As Deputy Harer approached, Ms. Fritz indicated she was going to retrieve a facial mask in order to converse with him safely. Deputy Harer followed Ms. Fritz to her vehicle and stood very close to her in an intimidating manner. Ms. Fritz requested that Deputy Harer don a facial mask, in order to converse safely, and/or step back (at least six feet - the distance designated as safe during the pandemic: *i.e.*, "social distancing"). Deputy Harer responded, as did Deputy Munz: "[We] follow [Mayor] Venable and [Governor] Lee's orders, not [President] Biden's".

51.     Deputy Harer demanded identification from Ms. Fritz (although, Deputy Munz had sufficiently identified Ms. Fritz and, obviously, had been the one to call for "back up" for whatever/unknown illogical reason, as Ms. Fritz posed NO THREAT to anyone.) Ms. Fritz, once again, explained that she was unable to produce her driver license.

8

52.     Deputy Harer's intimidating and hostile demeanor unnerved Ms. Fritz, as had Deputy Munz's, and she immediately decided to seek the protection/support of her (male) next-door-neighbor. Ms. Fritz began to traverse her yard, toward her neighbor's residence. Deputy Harer shadowed Ms. Fritz and demanded to know her intentions.

53.     Ms. Fritz responded that, during his brief and initial encounter with her, as a 61-year-old woman residing alone (her husband lives and works in Chicago), Deputy Harer was "scaring [her]". Ms. Fritz explained that she was going to seek the presence of her male neighbor for support and safety. Additionally, she stated that a simple request of Deputy Munz and Deputy Harer to don facial masks unnecessarily caused friction and hostility.

54.     During this exchange, Deputy Harer DID NOT declare, in any manner whatsoever, that Ms. Fritz was: (1) not at liberty to leave on her own volition; (2) was being detained; or (3) was under arrest. Accordingly, Ms. Fritz was free to continue towards her destination next door, without the threat of an incident or interference, and she did so.

55.     Immediately after Ms. Fritz stated her concerns and intentions, Deputy Harer shouted: "You are under arrest!"  Deputy Harer then instantly tackled Ms. Fritz to the ground without warning. As she stumbled forward by the force of Deputy Harer's sudden, and obviously unsuspected, attack, Ms. Fritz fell and struck a large protruding tree stump (or root). Upon landing, Deputy Harer straddled and/or kneeled on Ms. Fritz's back, pinning her to the ground.

56.     Terrified, Ms. Fritz began screaming. Deputy Harer remained with his full weight on Ms. Fritz's back and demanded to know who Ms. Fritz was "yelling for". Ms. Fritz gasped that she was calling out for a neighbor. Deputy Harer replied that, if she continued to scream, he was going to taze her.

Case 2:22-cv-00054-CEA-CRW     Document 1     Filed 05/20/22     Page 9 of 46     PageID #: 9

57. Upon hearing this threat, Ms. Fritz fearfully replied that she had a heart condition. Deputy Harer demanded to know "[w]hat condition?". Ms. Fritz responded that she had a heart murmur.

58. Ms. Fritz could barely breathe, as a result of having been violently tackled to the ground, but managed to gasp: "Why is this happening?, or words to that effect. Lying prostrate on the ground, with Deputy Harer kneeling on her back, Ms. Fritz, in utter shock of being tackled to the ground, began experiencing excruciating pain in her right ankle, knee, and elbow, as well as pain in her abdomen and breasts.

59. Deputy Harer forcefully jerked Ms. Fritz's arms behind her back and placed handcuffs on her wrists while, simultaneously, demanding that Ms. Fritz stand up. Deputy Harer allowed Ms. Fritz no time to stand on her own accord after his violent, unwarranted attack. Instead, while issuing his verbal order, Deputy Harer yanked Ms. Fritz from the ground by the handcuffs he had placed on her.

60. The brutality of the sudden attack, the weight of Deputy Harer on her back, and the violent pulling of her body, unquestionably, caused Ms. Fritz to suffer additional excruciating pain.

61. Thereafter, Deputy Harer pushed Ms. Fritz toward his patrol vehicle and forced her into the rear seat. Obviously, Ms. Fritz was overheated and sweating profusely due to Deputy Harer's attack. Ms. Fritz begged Deputy Harer to engage the air conditioning. He ignored her and slammed the door shut.

62. It should be noted that the outside temperature on May 22, 2021, at the time of the incident, was approximately 87 degrees (Fahrenheit). Upon arriving at Ms. Fritz's residence, Deputy Harer parked his patrol vehicle in the direct sunlight and turned the ignition off prior to

exiting the vehicle. The windows of the patrol vehicle were tightly closed. Needless to say, the inside of the patrol vehicle was sweltering.

63.     While being forced into the patrol vehicle, Ms. Fritz observed approximately seven official vehicles, all with their emergency lights flashing, parked in the vicinity of her residence.

64.     Ms. Fritz remained in the rear seat of the patrol vehicle for approximately one and one-half hours while the responding deputies conversed. During this time, Deputy Harer returned several times to retrieve items and/or paperwork from the front seat of the vehicle. Ms. Fritz repeatedly requested that Deputy Harer engage the air conditioning. Deputy Harer refused, stating: "You have no rights now.", or words to that effect.

65.     Upon information and belief, Constable Jones, eventually approached the patrol vehicle, opened the rear door, peered at Ms. Fritz, and then announced to the other individuals present (upon information and belief, Sullivan County Sheriff's deputies): "No. She's not on anything. She's fine."  Thereafter, Constable Jones turned his attention to Ms. Fritz and inquired: "What's going on?".

66.     Ms. Fritz described the original reckless-driving incident, as well her intentions to inform the young man's parents of the same. Ms. Fritz also recited her request that Deputies Munz and Harer don facial masks if, and when, they approached her within a distance of six feet or less.

67.     Constable Jones retorted: "We follow what [Mayor] Venable and [Governor] Lee say, and they don't require us to wear a mask. [President] Biden preaches that mask shit", or words to that effect.

68.     Ms. Fritz requested that Constable Jones turn on the air conditioning and explained that she was feeling very sick, and her chest hurt.

69. Constable Jones responded by ripping the mask from Ms. Fritz's face (and nearly ripping out her pierced earrings in the process). He proceeded to shove the mask in the side of door and stated: "See if that cools you off!", or words to that effect, and then slammed the patrol vehicle door shut.

70. It should be noted that, as the outside temperature was approximately 87 degrees (Fahrenheit), after one hour, the air temperature inside of the patrol vehicle would have been approximately 140 degrees (Fahrenheit). Additionally, the temperature in the closed patrol vehicle increased by approximately 19 degrees (Fahrenheit) within ten minutes; 29 degrees (Fahrenheit) within 20 minutes; 34 degrees (Fahrenheit) within 30 minutes, and so forth. Ms. Fritz remained in the parked patrol vehicle for approximately one and one-half hours (prior to being removed for the body search); accordingly, the interior temperature of the patrol vehicle would have been approximately 174 degrees (Fahrenheit) at the time Ms. Fritz was removed from the vehicle for a body search.

71. Immediately upon completion of the body search, the handcuffs were replaced on Ms. Fritz, and she remained standing near the patrol vehicle. At this juncture, Constable Jones approached her and sneered: "Now, do you think you've learned how to talk to the police?", or words to that effect.

72. Ms. Fritz replied that she had simply requested that the deputies and constable wear masks, as the risk of contracting COVID was, quite obviously, a world-wide concern. Ms. Fritz recounted that two deputies, and Jones himself, parroted: "I do not have to wear a mask. I go by what [Mayor] Venable and [Governor] Lee say, not [President] Biden", as if this were the "scripted" response to a request to don a facial mask. Ms. Fritz inquired: "Is this political? I am

aware that the sheriff is an elected office and is very political" and "I know [Sheriff] Cassidy is a Republican."

73. Immediately upon hearing Ms. Fritz's suggestion as to a possible political motive for this unprovoked physical and psychological brutality, Ms. Fritz was attacked, yet again, by several deputies and Constable Jones as she stood motionless and handcuffed.

74. Ms. Fritz was yanked violently, by a belt loop on her jeans, and was thrown, handcuffed and face first, into of the rear seat of the sweltering patrol vehicle so violently that she was later informed by a witness that the patrol vehicle rocked back and forth. Deputy Harer continued his abuse by threatening to slam the door on Ms. Fritz's feet. He then shoved her feet into the vehicle and slammed the door, leaving Ms. Fritz, facedown and handcuffed in the sweltering vehicle.

75. Ms. Fritz had been thrown in the vehicle with such force, with absolutely no ability to protect herself from injury, that her face hit the seat belt fastener. Additionally, due to being pulled up by a belt loop of her jeans, she suffered an anal injury. Once again, Ms. Fritz was left, defenseless and beaten, in the sweltering patrol vehicle. Ms. Fritz remained in that position for an extended period prior to being able to maneuver herself into a seated position. Eventually, Deputy Harer opened the door and announced: "Look, she got herself up", or words to that effect.

76. Once again, Ms. Fritz requested that Deputy Harer engage the air conditioning. Once again, Deputy Harer ignored the request and slammed the door shut. At this juncture, the interior temperature of the patrol vehicle was approximately 196 degrees (Fahrenheit)).

77. Deputy Harer and a female deputy then proceeded to walk to Ms. Fritz's residence, knocked on the door, and rang the doorbell. Thereafter, Deputy Harer returned to the vehicle, opened the door, and shouted: "Where do you live?!" Ms. Fritz murmured: "I live here." Deputy

13

Harer demanded to know why no one answered the door. Ms. Fritz stated, "I live alone. My children are grown, and my husband works and lives in Chicago."

78. Deputy Harer informed Ms. Fritz that she was being transported to jail and asked if there was anything she needed from her vehicle. Before responding, Ms. Fritz again begged Deputy Harer to please engage the air conditioning; thereafter, she requested her purse and cellphone from her vehicle. Deputy Harer responded: "No" to both requests. Ms. Fritz replied to Deputy Harer that *he had asked her* if she needed anything. Deputy Harer stated: "Never mind, you've lost your chance for that now", or words to that effect.

79. As Deputy Harer got in the patrol vehicle, Ms. Fritz requested that he fasten her seatbelt. He refused and retorted: "You have no rights.".

80. During the transport to the jail facility, Deputy Harer asked Ms. Fritz if she was "on anything for mental issues or being treated for them", or words to that effect. Ms. Fritz responded "No." Deputy Harer retorted: "You need to be.".

81. Ms. Fritz asked Deputy Harer to take her to Holston Valley Medical Center ("HVMC") immediately, as she was feeling very dizzy and nauseous; the excruciating pain in her knee and ankle had not subsided; and, as her face struck the seat belt fastener upon being thrown into the vehicle, her face was bruised and painful. Deputy Harer responded that an EMT could evaluate Ms. Fritz upon arrival at jail.

82. Upon arrival at the port area of the Sullivan County Jail, Ms. Fritz was met by an EMT. Deputy Harer removed the handcuffs, and the EMT performed an assessment. The assessment consisted of instructing Ms. Fritz to move her right hand, right arm, and right leg. He also removed her right shoe, looked at her ankle, and declared "nothing broken".

14

83. Ms. Fritz's right foot and both hands were very swollen at the time of the assessment. Ms. Fritz informed the EMT that she was experiencing chest pain and dizziness. In response, the EMT looked at Deputy Harer and stated: "Don't you have a nurse at the jail?" Deputy Harer hesitated but responded: "Yes". The EMT stated: "She should see a nurse in the jail.".

84. Deputy Harer directed Ms. Fritz into the booking area of the facility, and left Ms. Fritz with a female deputy for the booking process. Deputy Harer failed to mention that Ms. Fritz should be seen by a nurse.

85. The booking deputy exclaimed to Ms. Fritz: "What happened to you!?". Ms. Fritz responded that she had requested three "official" individuals to wear facial masks; thereafter, she was "beaten by them", or words to that effect.

86. During the booking procedure, the female deputy attempted to remove Ms. Fritz's rings, but given that her fingers were so swollen, it was an effort in futility. Ultimately, liquid soap was required to remove the rings. Thereafter, the deputy commented about: Ms. Fritz's swollen fingers; the bruising and swelling on her hands; ankles; and feet; and her very pale appearance. Ms. Fritz responded by informing the deputy that she had been assessed by an EMT and was advised to see a nurse (at the jail). Ms. Fritz also told the deputy about her request to Deputy Harer to take her to the hospital and his refusal thereof.

87. Ms. Fritz was told a magistrate would arrive soon. Ms. Fritz was advised to "be really sweet to him" so he would release her on own recognizance. Thereafter, she should go to the hospital, as she obviously required medical attention.

88. The deputy then transferred Ms. Fritz to the custody of Deputy Tyler McCreedy ("Deputy McCreedy"). Deputy McCreedy attempted to fingerprint Ms. Fritz several times and, eventually commented on the obvious swelling of her hands. Deputy McCreedy inquired as to how

Ms. Fritz's right hand was injured and was very apologetic when he had to "roll" her hand for a scan. As Ms. Fritz winced, Deputy McCreedy stated, "That has got to hurt!", or words to that effect.

89. Upon completion of the booking process, Ms. Fritz was permitted to use the telephone; whereupon she contacted her mother and husband.

90. Moments later, the magistrate appeared and provided documents to Ms. Fritz outlining the charges against her and instructed her to sign the same. Ms. Fritz hesitated and responded that as she was not guilty of the charges against her. The magistrate responded, "You sign this, and I let you leave. If you refuse to sign them, you will have to spend the weekend in here", or words to that effect. Ms. Fritz signed the requested documents. Ms. Fritz was released, and her brother drove her to her residence to prepare to go to the hospital.

91. Upon arriving at her residence, Ms. Fritz attempted to urinate. Due to extreme dehydration, she was unable to do so. Ms. Fritz then attempted to drink some water, but it was too painful. Ms. Fritz's chest tightened; her neck and teeth hurt; she experienced severe pain between her shoulder blades with the pain radiating down her left arm; and she was dizzy, unsteady, and nauseated.

92. Upon assessment at the Emergency Room, Ms. Fritz was diagnosed with hypotension (low blood pressure). A technician attempted to perform an EKG on Ms. Fritz; however, she began vomiting. Ms. Fritz was unable to stand during the performance of a chest x-ray.

93. An echocardiogram was performed on Ms. Fritz, which revealed that the ventricles in her heart were barely moving, and she had an ejection fraction of 20-25%. A second EKG indicated that Ms. Fritz was suffering from a ST-elevation myocardial infarction (STEMI), which

16

is a form of heart attack. The cardiologist informed Ms. Fritz that she was suffering from pulmonary edema, causing her breathing difficulties and pain between her shoulder blades.

94. Thereafter, Ms. Fritz underwent a cardiac catheterization resulting in a diagnosis of Takotsubo cardiomyopathy and congestive heart failure. Takotsubo cardiomyopathy is stress-induced and manifests itself with symptoms that include pulmonary edema and cardiogenic shock with hypotension. Ms. Fritz was admitted to the intensive-care unit (ICU), where she remained from May 22, 2021, through May 27, 2021.

95. Ms. Fritz was advised that she could return to work on June 7, 2021; however, on the evening of June 6, 2021, Ms. Fritz began experiencing chest pain and shortness of breath, body aches, and was weak and nauseous. She felt that she was going to lose consciousness, so she attempted to lie down. She immediately began projectile vomiting.

96. Ms. Fritz called for her daughter, who had been staying with Ms. Fritz since the attack, and her daughter called Emergency 911. EMS arrived, and Ms. Fritz was transported to the HVMC Emergency Room.

97. Ms. Fritz was, again, diagnosed with hypotension and pulmonary edema and transferred to the ICU. Testing revealed that Ms. Fritz's white blood count (WBC) was elevated higher than her original admission due to cardiac inflammation.

98. Ms. Fritz was also diagnosed with an acute exacerbation of congestive heart failure related to her previous Takotsubo cardiomyopathy and congestive heart failure diagnosis. Ms. Fritz remained in the ICU from June 7, 2021, through June 10, 2021.

99. Ms. Fritz has had significant follow-up medical treatment with her primary-care provider and the Heart Success Clinic as a result of the cardiac condition caused by Defendants.

100. Ms. Fritz was medically unable to return to work until June 21, 2021. Additionally, she has incurred extensive medical expenses; has suffered economic loss; was physically injured and psychologically and emotionally damaged; humiliated; and continues to suffer nightmares of the events of May 22, 2021.

101. Ms. Fritz now fears of law enforcement as a result of the (apparently) politically motivated police brutality to which she was subjected.

102. The Sullivan County Sheriff's Department initiated criminal charges against Ms. Fritz, as follows: (1) assault – Tenn. Code Ann. § 39-13-101; (2) evading arrest – Tenn. Code Ann. § 39-16-603; (3) resisting stop, frisk, halt, arrest or search – Tenn. Code Ann. § 39-16-602; and (4) disorderly conduct – Tenn. Code Ann. § 39-17-305.

103. On May 10, 2022, Sullivan County General Sessions Court dismissed all charges, with prejudice, in favor of Ms. Fritz.

## IV. CLAIMS

### COUNT I

**VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
TO BE FREE FROM UNREASONABLE SEIZURE PURSUANT TO 42 U.S.C. § 1983:
LACK OF PROBABLE CAUSE FOR ARREST – DEPUTY HARER**

104. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-103.

105. A person commits the crime of assault who, pursuant to Tenn. Code Ann. § 39-13-101:

    (1)    Intentionally, knowingly or recklessly causes bodily injury to another;

    (2)    Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3)   Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

106.   A person commits the crime of evading arrest, pursuant to Tenn. Code Ann. § 39-16-603, as follows:

(a) (1)  Except as provided in subsection (b), it is unlawful for any person to intentionally conceal themselves or flee by any means of locomotion from anyone the person knows to be a law enforcement deputy if the person:

(A) Knows the deputy is attempting to arrest the person; or

(B) Has been arrested.

(2)  It is a defense to prosecution under this subsection (a) that the attempted arrest was unlawful.

107.   A person commits the crime of resisting stop, arrest, pursuant to Tenn. Code Ann. § 39-16-602, as follows:

(a)   It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement deputy, or anyone acting in a law enforcement deputy's presence and at the deputy's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement deputy or another.

108.   A person commits the crime of disorderly conduct, pursuant to Tenn. Code Ann. § 39-17-305, as follows:

(a)   A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:

(1) Engages in fighting or in violent or threatening behavior;

(2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or

19

(3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

(b)     A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.

109.    As set forth more fully herein, *supra*, Ms. Fritz did not engage in any activity that would violate any of the four referenced statutes, nor did Deputy Harer have probable cause to believe that Ms. Fritz committed any of the referenced offenses.

110.    At all times, Ms. Fritz peaceably followed Deputy Harer's instructions and, at no point, did Deputy Harer advise, warn, or announce, in any manner whatsoever, that Ms. Fritz was: (1) not at liberty to leave on her own volition; (2) was being detained; and/or (3) was under arrest.

111.    Simultaneous with advising Ms. Fritz that she was under arrest, Deputy Harer tackled Ms. Fritz to the ground, thereby immobilizing her. Deputy Harer did not permit Ms. Fritz the opportunity to submit to an arrest prior to violently attacking her.

112.    Terrified, Ms. Fritz began screaming for her neighbor. Ms. Fritz's actions, in no way, prevented, or hindered, Deputy Harer from performing of his law-enforcement duties.

113.    Accordingly, when Deputy Harer placed Ms. Fritz under arrest, he did so without probable cause, thereby violating Ms. Fritz's Fourth and Fourteenth Amendment rights to be free from unreasonable, warrantless seizures.

114.    As a direct and proximate result of Defendant Harer's deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff has suffered serious physical and mental injury and damages and is entitled to the demanded relief.

<u>**COUNT II**</u>

**VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
TO BE FREE FROM UNREASONABLE SEIZURE PURSUANT TO 42 U.S.C. § 1983:
USE OF EXCESSIVE FORCE IN EFFECTING ARREST – DEPUTY HARER**

115.    Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-114.

116.    As set forth more fully herein, Deputy Harer unnecessarily utilized excessive force when effecting the arrest of Ms. Fritz.

117.    At the time of the incident, Ms. Fritz was a 61-year-old female; stood five (5)-foot and one (1)-inch tall; and weighed 176-pounds. Ms. Fritz was unarmed.

118.    Ms. Fritz was walking to her neighbor's house at the time of Deputy Harer's unprovoked attack and had informed Deputy Harer of her intention to do the same. At no point, as Ms. Fritz proceeded toward her neighbor's residence, did Deputy Harer advise, warn, or announce, in any manner whatsoever, that Ms. Fritz was not at liberty to leave on her own volition. Deputy Harer suddenly shouted "You are under arrest" while simultaneously tackling Ms. Fritz to the ground.

119.    Ms. Fritz posed no existential threat to Deputy Harer at the time of the unprovoked attack. Deputy Harer's actions in violently tackling Ms. Fritz to the ground, while her back was to him, were clearly excessive given the circumstances. Furthermore, Deputy Harer's actions in yanking Ms. Fritz from the ground to a standing position by utilizing the handcuffs he had just placed on her was clearly unnecessary and physically abusive.

120.    The foregoing actions by Deputy Harer violate the Fourth and Fourteenth Amendment's prohibition of unreasonable seizure through the use of excessive force.

21

121. As a direct and proximate result of Deputy Harer's unreasonable seizure of Ms. Fritz through the use of excessive force, Ms. Fritz has suffered physical, mental, and emotional damages, and is entitled to the demanded relief..

## COUNT III

**VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO BE FREE FROM UNREASONABLE SEIZURE PURSUANT TO 42 U.S.C. § 1983: USE OF EXCESSIVE FORCE – THROWING PLAINTIFF INTO VEHICLE – DEPUTY HARER, CONSTABLE JONES, AND JOHN DOE OR JANE DOE 1-5**

122. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-121.

123. As set forth more fully herein, immediately after Ms. Fritz inquired and/or suggested that the reason she was being mistreated by law enforcement may be politically motivated, Ms. Fritz was attacked, yet again.

124. Ms. Fritz was yanked violently, by one of the belt loops on her jeans, and was thrown, handcuffed and face first, into of the rear seat of the sweltering patrol vehicle. Her feet were then shoved into the vehicle, and the door was slammed shut, leaving Ms. Fritz, facedown and handcuffed in the sweltering vehicle.

125. As previously averred, Ms. Fritz had been thrown in the vehicle with such force, with absolutely no ability to protect herself from injury, that her face hit the seat belt fastener. Additionally, due to being pulled up by the belt loop of her jeans, she suffered an anal injury.

126. Given that Ms. Fritz was in custody, handcuffed, and unarmed, the actions by Deputy Harer, Constable Jones, and John Doe or Jane Doe 1-5, as averred, were clearly excessive and in violation of Ms. Fritz's rights to be free from unreasonable seizure pursuant to the Fourth and Fourteenth Amendments.

127. As a direct and proximate result of Deputy Harer, Constable Jones, and John Doe or Jane Doe's 1 -5 unreasonable seizure of Ms. Fritz through the use of excessive force, Ms. Fritz has suffered physical, mental, and emotional damages, and is entitled to the demanded relief..

## COUNT IV

**VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO BE FREE FROM UNREASONABLE SEIZURE PURSUANT TO 42 U.S.C. § 1983: DELIBERATE INDIFFERENCE – SWELTERING VEHICLE – DEPUTY HARER**

128. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-127.

129. As set forth more fully herein, Deputy Harer placed Ms. Fritz in the back seat of his patrol vehicle, which was parked in direct sunlight, where she was detained for an excessive period without air conditioning or access to fresh air through a window. The outside temperature was approximately 87 degrees (Fahrenheit).

130. Despite her numerous pleas to Deputy Harer to engage the air conditioning, Deputy Harer maliciously ignored Ms. Fritz's requests.

131. As a direct and proximate result of Deputy Harer's deliberate indifference to Ms. Fritz's requests and reasonable need for air conditioning and/or fresh, cool air, Deputy Harer callously and deliberately chose to sadistically punish Ms. Fritz by forcing her to remain in inhumane conditions, as referenced.

132. The foregoing conduct by Deputy Harer constitutes deliberate indifference in violation of the Fourth and Fourteenth Amendment's prohibition of unreasonable seizure.

133. As a direct and proximate result of Deputy Harer's deliberate indifference, Ms. Fritz has suffered physical, mental, and emotional damages, and is entitled to the demanded relief.

## COUNT V

**VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
TO BE FREE FROM UNREASONABLE SEIZURE PURSUANT TO 42 U.S.C. § 1983:
DELIBERATE INDIFFERENCE – DENIAL OF NECESSARY
MEDICAL CARE – DEPUTY HARER**

134.     Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-133.

135.     As set forth more fully herein, as a result of the violent beating perpetrated upon Ms. Fritz by Deputy Harer, Constable Jones, and John Doe or Jane Doe 1-5, coupled with Deputy Harer detaining Ms. Fritz in the sweltering patrol vehicle, Ms. Fritz was in dire need of medical attention.

136.     Deputy Harer was aware, or reasonably should have been aware, of Ms. Fritz's need for immediate medical attention due to Ms. Fritz's appearance; the beatings she had just endured by his hand and those of others; being left for an extended period in his sweltering vehicle; and her pleas for emergent medical attention.

137.     Despite this awareness, Deputy Harer refused to transport Ms. Fritz to a medical facility for treatment. Further, after an EMT performed an assessment of Ms. Fritz in the port of the jail facility and, specifically, advised Deputy Harer that Ms. Fritz should be seen by a nurse in the Sullivan County Jail, Deputy Harer failed to advise personnel at the facility of the EMT's assessment or Ms. Fritz's need for medical care.

138.     Rather, Deputy Harer negligently, recklessly, and callously left Ms. Fritz with booking deputies and failed to disclose Ms. Fritz's medical needs. Rather, Deputy Harer remained silent on the subject.

139. As set forth more fully herein, as a direct and proximate result of Deputy Harer's deliberate indifference to Ms. Fritz's medical needs, she developed Takotsubo cardiomyopathy and congestive heart failure, which necessitated two (2) extensive stays in the ICU at HVMC.

140. The foregoing actions by Deputy Harer constitute violations of Ms. Fritz's Fourth and Fourteenth Amendment rights to be free from unreasonable seizure.

141. As a direct and proximate result of the foregoing violations of Ms. Fritz's Fourth and Fourteenth Amendment rights to be free from unreasonable seizure, she has suffered injuries and damages, and is entitled to the demanded relief.

## <u>COUNT VI</u>

### VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO BE FREE FROM UNREASONABLE SEIZURE PURSUANT TO 42 U.S.C. § 1983: FAILURE TO INTERVENE – JOHN DOE AND JANE DOE 1-5

142. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-141.

143. As set forth more fully herein, certain of John Doe and Jane Doe 1-5 were present and observed Deputy Harer, Constable Jones, and John Doe or Jane Doe 1-5 grab Ms. Fritz and yank her up violently by one of the belt loops on her jeans, then throw her, handcuffed and face first (her face hit the seat belt fastener), into of the rear seat of the sweltering patrol vehicle. Deputy Harer then shoved her feet into the vehicle and slammed the door shut. Ms. Fritz remained handcuffed at the time of this brutal attack.

144. Certain of John Doe and Jane Doe 1-5 had constitutional duties to intervene upon witnessing Deputy Harer, Constable Jones, and certain other of John Doe or Jane Doe 1-5 violate the constitutional rights of Ms. Fritz.

25

145. Notwithstanding their duties to intervene, certain of John Doe and Jane Doe 1-5 failed to act to protect Ms. Fritz from constitutional violations perpetrated by Deputy Harer, Constable Jones, and certain John Doe and Jane Doe 1-5.

146. The averred conduct violated Ms. Fritz's Fourth and Fourteenth Amendment rights to be free from unreasonable seizure.

147. As a direct and proximate result of John Doe and Jane Doe 1-5's violations of Ms. Fritz's Fourth and Fourteenth amendment right to be free from unreasonable seizure, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

<u>COUNT VII</u>

**VIOLATION OF PLAINTIFF'S RIGHTS TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEPUTY MUNZ**

148. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-147.

149. As set forth more fully herein, Ms. Fritz exercised her right to freedom of speech, including, but not limited to, requesting that Deputy Munz don a mask.

150. In response thereto, upon information and belief, subsequent to her encounter with Ms. Fritz, and as Ms. Fritz returned to her residence, Deputy Munz transmitted instructions to Deputy Harer, *via* law enforcement two-way radios, to "Step it up"; *i.e.*: harass, assault, arrest, and otherwise violate Ms. Fritz's constitutional rights and/or commit torts on Ms. Fritz.

151. Upon information and belief, Deputy Harer adhered to Deputy Munz's instructions, thereby violating Ms. Fritz's civil rights and committing torts on her, as averred more fully herein.

152. The foregoing actions by Deputy Munz violated Ms. Fritz's rights to freedom of speech pursuant to the First Amendment.

153. As a direct and proximate result of Deputy Munz's violations of Ms. Fritz's rights to freedom of speech, pursuant to the First Amendment, she has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT VIII

### VIOLATION OF PLAINTIFF'S RIGHTS TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEPUTY HARER

154. Plaintiff re-alleges and incorporates herein by reference the averments of Paragraphs 1–153.

155. As set forth more fully herein, Ms. Fritz exercised her right to freedom of speech, including, but not limited to, requesting that Deputy Harer don a mask.

156. Ms. Fritz further suggested to Deputy Harer that the way she was being abused by him, Constable Jones, and John Doe and Jane Doe 1-5 was politically motivated.

157. As a direct and proximate response to Ms. Fritz's averred exercise of her First Amendment right to freedom of speech, as averred more fully herein, Deputy Harer: (1) launched unprovoked physical and psychological attacks on Ms. Fritz, resulting in physical, psychologizal, and emotional injuries; (2) confined Ms. Fritz to the backseat of his sweltering patrol vehicle for an extended period; and (3) denied Ms. Fritz necessary medical care.

158. The foregoing actions by Deputy Harer violate Ms. Fritz's rights to freedom of speech pursuant to the First Amendment.

159. As a direct and proximate result of Deputy Harer's violations of Ms. Fritz's rights to freedom of speech, pursuant to the First Amendment, she has suffered injuries and damages, and is entitled to the demanded relief.

**COUNT IX**

**VIOLATION OF PLAINTIFF'S RIGHTS TO FREEDOM OF SPEECH UNDER THE
FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
PURSUANT TO 42 U.S.C. § 1983 – CONSTABLE JONES**

160.     Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-159.

161.     As set forth more fully herein, as a direct and proximate result comments by Ms. Fritz that the way she was being treated was politically motivated, Constable Jones assaulted her by ripping the mask from her face and sneered: "Now do you think you've learned how to talk to the police?".

162.     As set forth more fully herein, Constable Jones, in response to Ms. Frisk inquiring: "Is this political? I am aware that the sheriff is an elected office and is very political" and "I know [Sheriff] Cassidy is a Republican", launched unprovoked physical and psychological attacks on Ms. Fritz, resulting in physical, psychological, and emotional injuries.

163.     The foregoing averred conduct by Constable Jones constitutes a violation of Ms. Fritz's rights to freedom of speech pursuant to the First Amendment.

164.     As a direct and proximate result of the averred unconstitutional conduct by Constable Jones, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

**COUNT X**

**VIOLATION OF PLAINTIFF'S RIGHTS TO FREEDOM OF SPEECH UNDER THE
FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
PURSUANT TO 42 U.S.C. § 1983 – DEFENDANTS VENABLE AND CASSIDY**

165.     Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-164.

28

166. As averred more fully herein, based upon statements made by: (1) Deputy Munz; (2) Deputy Harer; and (3) Constable Jones, Defendant Venable maintained a policy and/or directive, as implemented by Sheriff Cassidy, to physically and otherwise punish citizens who express a political belief that sheriff deputies should wear masks, or otherwise maintain a six (6)-foot distance from citizens when performing their job duties, as a result of the COVID-19 pandemic, and otherwise support President Joseph R. Biden and the current Democratic presidential administration's views regarding masking and social distancing.

167. As a direct and proximate result of Mayor Venable's and Sheriff's Cassidy's policy and/or directive regarding mask wearing, deputies, such as Deputy Harer, Deputy Munz, Constable Jones, and John Doe and Jane Doe 1-5, were compelled to exact physical, mental, and emotional punishment on Ms. Fritz due to her political beliefs.

168. By maintaining such policy and/or directive, Defendants Venable and Cassidy violated Ms. Fritz's First Amendment rights to freedom of speech.

169. As a direct and proximate result of Defendants' violations of Ms. Fritz's First Amendment rights to freedom of speech, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT XI

### VIOLATION OF PLAINTIFF'S RIGHTS TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEFENDANTS JOHN DOE AND JANE DOE 1-5

170. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-169.

171. As set forth more fully herein, as a direct and proximate result of comments by Ms. Fritz that the way she was being treated was politically motivated, John Doe and Jane Doe No. 1

launched unprovoked physical and psychological attacks on Ms. Fritz, resulting in physical, psychological, and emotional injuries.

172. The foregoing averred conduct by John Doe and Jane Doe 1-5 constitute a violation of Ms. Fritz's rights to freedom of speech pursuant to the First Amendment.

173. As a direct and proximate result of the averred unconstitutional conduct by John Doe and Jane Doe 1-5, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief..

## COUNT XII

**VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEPUTY HARER**

174. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-173.

175. As set forth more fully herein, Deputy Harer launched an unprovoked attack on Ms. Fritz, which resulted in physical, psychological, and emotional injuries.

176. As set forth more fully herein, Deputy Harer, assisted by Constable Jones, and certain of John Doe and Jane Doe 1-5, physically picked up Ms. Fritz from the ground, and threw her, face first, into Deputy Harer's patrol vehicle, smashing her face into the seatbelt buckle, and left her, face-down and handcuffed.

177. As set forth more fully herein, Deputy Harer deliberately, maliciously, and sadistically confined Ms. Fritz to the backseat of his patrol vehicle in the sweltering heat for an extended period.

178. The foregoing averred conduct violates Ms. Fritz's Fourteenth Amendment rights to substantive due process.

179. As a direct and proximate result of Deputy Harer's violations of Ms. Fritz's Fourteenth Amendment rights to substantive due process, she has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT XIII

### VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – CONSTABLE JONES

180. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-179.

181. As set forth more fully herein, Constable Jones launched an unprovoked attack on Ms. Fritz, which resulted in physical, psychological, and emotional injuries.

182. As set forth more fully herein, Constable Jones, assisted by Deputy Harer, and certain of John Doe and Jane Doe 1-5, physically picked up Ms. Fritz from the ground, and threw her, face first, into Deputy Harer's patrol vehicle, smashing her face into the seatbelt buckle, and left her, face-down and handcuffed.

183. The foregoing averred conduct violates Ms. Fritz's Fourteenth Amendment rights to substantive due process.

184. As a direct and proximate result of Constable Jones's violations of Ms. Fritz's Fourteenth Amendment rights to substantive due process, she has suffered injuries and damages, and is entitled to the demanded relief.

31

## COUNT XIV

## VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEFENDANTS JOHN DOE AND JANE DOE 1-5

185.    Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-184.

186.    As set forth more fully herein, John Doe and Jane Doe 1-5, during the course of Ms. Fritz's detention/arrest by Deputy Harer, grabbed Ms. Fritz and yanked her up violently by one of the belt loops on her jeans, threw her, handcuffed and face first (her face hit the seat belt fastener), into of the rear seat of the sweltering patrol vehicle.

187.    The foregoing averred conduct by John Doe and Jane Doe 1-5 constitute a violation of Ms. Fritz's rights to substantive due process, pursuant to the Fourteenth Amendment.

188.    As a direct and proximate result of the averred unconstitutional conduct by John Doe and Jane Doe 1-5, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT XV

## VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983: DELIBERATE INDIFFERENCE – DEFENDANT SULLIVAN COUNTY

189.    Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-188.

190.    Upon information and belief, Sullivan County was aware that Mayor Venable, Sheriff Cassidy, Deputy Harer, Deputy Munz, Constable Jones, and John Doe and Jane Doe 1-5 were violating the constitutional rights of citizens, yet consciously and deliberately chose to do nothing to prevent such constitutional violations.

32

191. As a direct and proximate result of Sullivan County's deliberate indifference, Ms. Fritz suffered injuries and damages perpetrated by county officials and employees, including Mayor Venable, Sheriff Cassidy, Deputy Harer, Deputy Munz, Constable Jones, and John Doe and Jane Doe 1-5.

192. As a direct and proximate result of Sullivan County's deliberate indifference to the constitutional rights of citizens, including Ms. Fritz, she has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT XVI

### VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983: FAILURE TO PROTECT – DEFENDANT HARER

193. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-192.

194. After placing Ms. Fritz in custody, Deputy Harer had a duty, pursuant to the Fourteenth Amendment, to protect Ms. Fritz.

195. Deputy Harer violated the duties owed to Ms. Fritz by: (1) placing her in the sweltering heat of his patrol vehicle for an extended period; (2) refusing to engage his patrol vehicle's air conditioning, or otherwise lower a window, so that Ms. Fritz would have relief from the heat; and (3) failing to seek medical care either *via* a hospital; or, as agreed upon with an EMT, the jail facility nurse, for Ms. Fritz.

196. As a direct and proximate result of Deputy Harer's violations of his constitutional duties owed to Ms. Fritz pursuant to the Fourteenth Amendment, Ms. Fritz suffered significant injuries and damages, and is entitled to the demanded relief.

## COUNT XVII

## VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983: RATIFICATION – DEFENDANTS SULLIVAN COUNTY, VENABLE, AND CASSIDY

197. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-196.

198. Upon information and belief, in particular based upon statements from: (1) Deputy Munz; (2) Deputy Harer; (3) Constable Jones; and (4) John Doe and Jane Doe 1-5 were following instructions from "Venable and Lee", rather than "Biden", Defendants Sullivan County, Venable, and Cassidy were aware of, and ratified, the unconstitutional violations averred herein by Deputy Munz; Deputy Harer; Constable Jones; and John Doe and Jane Doe 1-5.

199. The foregoing ratification of Defendants Sullivan County, Venable, and Cassidy have directly and proximately resulted in injuries and damages suffered by Plaintiff, and is entitled to the demanded relief.

## COUNT XVIII

## VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO BE FREE FROM UNREASONABLE SEIZURE PURSUANT TO 42 U.S.C. § 1983: DELIBERATE INDIFFERENCE – HIRING, TRAINING, AND SUPERVISION – DEFENDANT CASSIDY

200. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-199.

201. Upon information and belief, as set forth more fully herein, Sheriff Cassidy hired employees, including Deputy Harer, Deputy Munz, and Defendants John Doe and Jane Doe 1-5, who were predisposed to violate the constitutional rights of citizens, including those such as Ms. Fritz who hold political views that are (or appear to be) adverse to that of Sheriff Cassidy.

34

202.   Further, upon information and belief, and as averred more fully herein, Sheriff Cassidy imposed his political views on the deputy sheriffs of Sullivan County, which are contrary to the political views (or perceived political) views of citizens such as, and including, Ms. Fritz.

203.   Further, upon information and belief, and as averred more fully herein, Sheriff Cassidy failed to properly supervise Deputy Harer, Deputy Munz, and John Doe and Jane Doe 1-5 to prohibit the same from exacting political retribution upon citizens, including Ms. Fritz, who hold different political views than did/does Sheriff Cassidy.

204.   Rather, upon information and belief, Sheriff Cassidy encouraged Deputy Harer, Deputy Munz, and John Doe and Jane Doe 1-5 to commit constitutional violations against citizens who held different political views than Sheriff Cassidy, including Ms. Fritz.

205.   As a result of the hiring, training, and supervision of Sheriff Cassidy, Ms. Fritz's constitutional rights, as averred more fully herein, were violated.

206.   As a direct and proximate result of Sheriff Cassidy's violations of Ms. Fritz's constitutional rights, she is entitled to damages, and is entitled to the demanded relief..

## COUNT XIX

### SUPPLEMENTAL STATE LAW CLAIM AGAINST
### DEFENDANT HARER FOR: ASSAULT AND BATTERY

207.   Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-206.

208.   As averred more fully herein, Deputy Harer intentionally, or knowingly, caused Ms. Fritz to reasonably fear imminent bodily injury.

209.   The foregoing acts by Deputy Harer against Ms. Fritz constitute assault and battery.

210.   As a direct and proximate result of Deputy Harer's assault and battery, Ms. Fritz has suffered injuries and damages and is entitled to the demanded relief.

## COUNT XX

### SUPPLEMENTAL STATE LAW CLAIM AGAINST
### DEFENDANT JONES FOR: ASSAULT AND BATTERY

211. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-210.

212. As averred more fully herein, Constable Jones intentionally, or knowingly, caused Ms. Fritz to reasonably fear imminent bodily injury.

213. The foregoing acts by Constable Jones against Ms. Fritz constitute assault and battery.

214. As a direct and proximate result of Constable Jones's assault and battery, Ms. Fritz has suffered injuries and damages and is entitled to the demanded relief.

## COUNT XXI

### SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANTS
### JOHN DOE AND JANE DOE 1-5 FOR: ASSAULT AND BATTERY

215. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-214.

216. As averred more fully herein, John Doe and Jane Doe 1-5, upon Ms. Fritz's inquiry as to whether she was being treated in such a brutal manner due to her political views, picked up Ms. Fritz and threw her into Deputy Harer's patrol vehicle, smashing her face into the seatbelt buckle.

217. The foregoing acts by John Doe and Jane Doe 1-5 against Ms. Fritz constitute assault and battery.

218. As a direct and proximate result of John Doe and Jane Doe 1-5's assault and battery, Ms. Fritz has suffered injuries and damages and is entitled to the demanded relief.

**COUNT XXII**

**SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT HARER FOR:**
**FALSE IMPRISONMENT**

219.    Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-218.

220.    As averred more fully herein, Deputy Harer detained and/or restrained Ms. Fritz against her will by placing her in handcuffs, and then confining her for an extended period in the backseat of his sweltering patrol vehicle.

221.    As averred more fully herein, Deputy Harer had no legal authority to detain, or otherwise restrain, Ms. Fritz against her will.

222.    The foregoing conduct constitutes false imprisonment in violation of Tennessee common law.

223.    As a direct and proximate result of Deputy Harer's false imprisonment, Ms. Fritz has suffered injuries and damages and is entitled to the demanded relief.

**COUNT XXIII**

**SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT HARER FOR:**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

224.    Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-223.

225.    As averred more fully herein, Deputy Harer's conduct was intentional or reckless and so outrageous that it is not to be tolerated by a civilized society.

226.    The foregoing constitutes intentional infliction of emotional distress inflicted upon Ms. Fritz by Deputy Harer.

227. As a direct and proximate result of Deputy Harer's intentional infliction of emotional distress, Ms. Fritz has suffered serious mental injury and is entitled to the demanded relief.

## COUNT XXIV

### SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT JONES FOR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

228. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-227.

229. As averred more fully herein, Constable Jones's conduct, including, but not limited to, ripping off Ms. Fritz's facial mask, was intentional or reckless and so outrageous that it is not to be tolerated by a civilized society.

230. The foregoing constitutes intentional infliction of emotional distress inflicted upon Ms. Fritz by Constable Jones.

231. As a direct and proximate result of Constable Jones intentional infliction of emotional distress, Ms. Fritz has suffered serious mental injury and damages and is entitled to the demanded relief.

## COUNT XXV

### SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANTS JOHN DOE AND JANE DOE 1-5 FOR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

232. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-231.

233. As averred more fully herein, John Doe and Jane Doe 1-5's conduct including, but not limited to, throwing Ms. Fritz, face first, causing her face to be smashed into the backseat belt

buckle, into the backseat of Deputy Harer's vehicle, was intentional or reckless and so outrageous that it is not to be tolerated by a civilized society.

234. The foregoing constitutes intentional infliction of emotional distress inflicted upon Ms. Fritz by John Doe and Jane Doe 1-5.

235. As a direct and proximate result of John Doe and Jane Doe 1-5's intentional infliction of emotional distress, Ms. Fritz has suffered serious mental injury and damages and is entitled to the demanded relief.

## COUNT XXVII

### SUPPLEMENTAL STATE LAW CLAIM AGAINST
### DEFENDANT HARER FOR: NEGLIGENCE

236. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-235.

237. After placing Ms. Fritz in custody, Deputy Harer had a duty to ensure that Ms. Fritz was not subjected to an unreasonable risk of injury.

238. As averred more fully herein, Deputy Harer breached his duty owed to Ms. Fritz by, among other things: (1) straddling and/or kneeling on Ms. Fritz while she was on the ground; (2) yanking Ms. Fritz up off the ground using the handcuffs he placed on her; (3) confining her to his patrol vehicle for extended periods in the sweltering heat with no air conditioning and without lowering any of the windows; (4) refusing to transport her to a medical facility for needed care; and (5) failing to advise anyone at the jail facility that an EMS technician advised that Ms. Fritz needed to be seen by a nurse at the jail for medical treatment.

239. As a direct and proximate result of the foregoing breach of the duties owed by Deputy Harer, Ms. Fritz suffered severe injuries and damages, as averred more fully herein.

240. The foregoing averred conduct by Deputy Harer constitutes negligence.

241.     As a direct and proximate result of Deputy Harer's negligence, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT XXVIII

### SUPPLEMENTAL STATE LAW CLAIM AGAINST
### DEFENDANT JONES FOR: NEGLIGENCE

242.     Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-241.

243.     Once Ms. Fritz was in custody, Constable Jones had a duty to ensure that Ms. Fritz was not subjected to an unreasonable risk of injury.

244.     As averred more fully herein, Constable Jones breached his duty owed to Ms. Fritz by, among other things: (1) ripping off Ms. Fritz's face mask; (2) picking up Ms. Fritz so hard by a belt loop of her jeans that it caused her an anal injury; (3) throwing Ms. Fritz, face first, into the backseat of Deputy Harer's vehicle and, thereby, causing her face to be smashed into the seatbelt buckle; and (4) confining her to Deputy Harer's sweltering patrol vehicle for an extended period without engaging the air conditioning.

245.     As a direct and proximate result of the foregoing breach of the duties owed by Constable Jones, Ms. Fritz suffered severe injuries and damages, as averred more fully herein.

246.     The foregoing averred conduct by Constable Jones constitutes negligence.

247.     As a direct and proximate result of Constable Jones's negligence, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT XXIX

### SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANTS
### JOHN DOE AND JANE DOE 1-5 FOR: NEGLIGENCE

248. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-247.

249. After Ms. Fritz was placed in custody, John Doe and Jane Doe 1-5 had a duty to ensure that Ms. Fritz was not subjected to an unreasonable risk of injury.

250. As averred more fully herein, John Doe and Jane Doe 1-5 breached their duties owed to Ms. Fritz by, among other things: (1) picking up Ms. Fritz so hard by a belt loop of her jeans that it caused her an anal injury; (2) throwing Ms. Fritz, face first, into the backseat of Deputy Harer's vehicle and, thereby, causing her face to be smashed into the seatbelt buckle; and, (3) confining her to Deputy Harer's sweltering patrol vehicle for an extended period.

251. As a direct and proximate result of the foregoing breach of the duties owed by John Doe and Jane Doe 1-5, Ms. Fritz suffered severe injuries and damages, as averred more fully herein.

252. The foregoing averred conduct by John Doe and Jane Doe 1-5 constitutes negligence.

253. As a direct and proximate result of John Doe's and Jane Doe's 1-5 negligence, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT XXX

### SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT HARER FOR:
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

254. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-255.

255.     In addition to the elements of negligence averred herein, *supra*, regarding Deputy Harer's conduct, vis-à-vis Ms. Fritz, it was reasonably foreseeable that the same would cause Ms. Fritz emotional distress.

256.     As a direct and proximate result of Deputy Harer's negligent actions, Ms. Fritz suffered severe emotional distress.

257.     The foregoing averred conduct by Deputy Harer constitutes negligent infliction of emotional distress.

258.     As a direct and proximate result of Deputy Harer's negligent infliction of emotional distress, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

## COUNT XXXI

### SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT JONES FOR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

259.     Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-258.

260.     In addition to the elements of negligence averred herein, *supra*, regarding Constable Jones's conduct, vis-à-vis Ms. Fritz, it was reasonably foreseeable that the same would cause Ms. Fritz emotional distress.

261.     As a direct and proximate result of Constable Jones's negligent actions, Ms. Fritz suffered severe emotional distress.

262.     The foregoing averred conduct by Constable Jones's constitutes negligent infliction of emotional distress.

263.     As a direct and proximate result of Constable Jones's negligent infliction of emotional distress, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

<u>**COUNT XXXII**</u>

**SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANTS JOHN DOE AND
JANE DOE 1-5 FOR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

264. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-263.

265. In addition to the elements of negligence averred herein, *supra*, regarding John Doe' and Jane Doe's 1-5 conduct, vis-à-vis Ms. Fritz, it was reasonably foreseeable that the same would cause Ms. Fritz emotional distress.

266. As a direct and proximate result of John Doe's and Jane Doe's 1-5 negligent actions, Ms. Fritz suffered severe emotional distress.

267. The foregoing averred conduct by John Doe and Jane Doe 1-5 constitutes negligent infliction of emotional distress.

268. As a direct and proximate result of John Doe's and Jane Doe's 1-5 negligent infliction of emotional distress, Ms. Fritz has suffered injuries and damages, and is entitled to the demanded relief.

<u>**COUNT XXXIII**</u>

**SUPPLEMENTAL STATE LAW CLAIM AGAINST DEFENDANT HARER FOR:
MALICIOUS PROSECUTION**

269. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-268.

270. Deputy Harer initiated criminal charges against Ms. Fritz in the Sullivan County General Sessions Court, as averred more fully herein.

271. On May 10, 2022, the Sullivan County General Sessions Court dismissed the action, with prejudice, in Ms. Fritz's favor.

272. The foregoing acts by Deputy Harer constitute malicious prosecution.

273. As a direct and proximate result of Deputy Harer's malicious prosecution of Ms. Fritz, she has suffered injuries and damages and is entitled to the demanded relief.

**COUNT XXXIV**

**SUPPLEMENTAL STATE CLAIM AGAINST ALL DEFENDANTS FOR: CONSPIRACY**

274. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-273.

275. As averred more fully herein, Deputy Harer, Deputy Munz, Constable Jones, John Doe and Jane Doe 1-5, and, upon information and belief, Mayor Venable, and Sheriff Cassidy, each having intent and knowledge of the other's intent, accomplished, by concert, an unlawful purpose, specifically:

    a) violating Ms. Fritz's First Amendment rights to freedom of speech;

    b) violating Ms. Fritz's Fourth and Fourteenth Amendment rights to be free from unreasonable, warrantless seizure;

    c) violating Ms. Fritz's Fourteenth Amendment rights to substantive due process;

    d) assaulting and battering Ms. Fritz;

    e) intentionally or negligently inflicting emotional distress on Ms. Fritz;

    f) falsely imprisoning Ms. Fritz;

    g) maliciously prosecuting Ms. Fritz; and

    h) violating owed duties to Ms. Fritz, amounting to negligence.

276. The foregoing acts amount to a civil conspiracy between Defendants.

277. As a direct and proximate result of the conspiracy by Defendants, Ms. Fritz has suffered injuries and damages and is entitled to the demanded relief.

44

## V.   DAMAGES

278.   Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-277.

279.   As a direct and proximate result of each of the foregoing averred acts, conduct, and violations of the law, Plaintiff suffered injuries and damages in an amount and according to proof including, but without limitation, medical bills, pain and suffering, emotional distress, inconvenience, embarrassment, humiliation, loss of enjoyment of life (both past and future), permanent impairment, lost wages, loss or impairment of future earning capacity, and other incidental and consequential damages.

280.   The averred actions by Defendants were intentional, fraudulent, malicious, and/or reckless and were with conscious disregard for Ms. Fritz's constitutional rights. Therefore, Plaintiff seeks an award of punitive damages under applicable law in an amount to be determined by a jury.

281.   Plaintiff is further entitled to and seeks recovery of her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## IV.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff sues for compensatory damages for not less than **FIVE MILLION DOLLARS and 00/100 CENTS ($5,000,000.00).**

**WHEREFORE**, Plaintiff sues for punitive damages for not less than **TWENTY-FIVE MILLION DOLLARS and 00/100 CENTS ($25,000,000.00).**

**WHEREFORE**, Plaintiff respectfully demands payment of her reasonable attorney's fees and costs in bringing this action pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully demands a jury be empaneled to hear this cause.

**WHEREFORE**, Plaintiff respectfully requests that this Court award such other and further relief as may be appropriate and assess the costs of this cause against Defendants.

*Respectfully submitted this 20th day of May 2022.*

**ROBIN FRITZ**

By: /s/ *James Friauf*
James W. Friauf (#027238)
LAW OFFICE OF JAMES W. FRIAUF, PLLC
9724 Kingston Pike
Suite 104
Knoxville, Tennessee 37922
Tele: (865) 236-0347
Fax: (865) 512-9174
Email: james@friauflaw.com
Our File No.: 21-219-CIV

*Attorney for Plaintiff Robin Fritz*